UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------- X
                                                                          :
AMY WINIK,                                                                :
                                                                          :        18-cv-1223-ARR-ST
                                          Plaintiff,                      :
                                                                          :        <u>NOT FOR PRINT OR</u>
                    -against-                                             :        <u>ELECTRONIC PUBLICATION</u>
                                                                          :
UNITED STATES OF AMERICA,                                                 :        **OPINION & ORDER**
                                                                          :
                                          Defendant.                      :
                                                                          :
-------------------------------------------------------------------------- X

ROSS, United States District Judge:

Plaintiff Amy Winik has brought a claim of negligence against the United States.  Am. Compl.

¶ 1, ECF No. 15 ("Compl.").  The government has moved to dismiss her complaint under Federal

Rule of Civil Procedure 12(b)(1) on two grounds: first, that the United States has not waived its

sovereign immunity for claims that arise out of misrepresentation, and second, that plaintiff has not

exhausted her administrative remedies, as required by the Federal Tort Claims Act ("FTCA").  Because

I conclude that plaintiff's claim arises out of misrepresentation, defendant's motion is granted.

## BACKGROUND

### A.  Factual Background

Plaintiff is a nurse at the Memorial Sloan Kettering Cancer Center ("Sloan Kettering").

Compl. ¶ 12.  While in nursing school, plaintiff entered into a scholarship agreement with the Health

Resources and Services Administration ("HRSA")—a federal agency within the U.S. Department of

Health and Human Services ("HHS").  Id. ¶ 13; Mem. of Law in Supp. of the Def.'s Mot. to Dismiss

1, ECF No. 17 ("Def.'s Mot.").  Under the terms of the agreement, plaintiff received money from

HRSA to pay for nursing school, which she would not have to repay if she worked for at least two

years at a health care facility with a critical shortage of nurses.  Compl. ¶ 14.  HRSA uses a scoring

system to determine which facilities have a shortage within the meaning of the agreement.  Id. ¶ 15. Facilities with a Health Professional Shortage Areas ("HPSA") score of 15 or more qualify as having a critical shortage of nurses.  Id. ¶ 16.

Plaintiff had trouble finding employment upon graduation.  Id. ¶¶ 18-19.  In March 2014, she contacted Arthur Williams, a HRSA employee tasked with assisting scholarship recipients.  Id. ¶ 20. Plaintiff asked whether she could apply to a facility with a HPSA score of 12.  Id. ¶ 21; Compl. Ex. D, ECF No. 15-4.  She also stated that she had applied to a hospital with multiple campuses, only some of which had critical shortages of nurses, and asked what she should do if she was offered a position at one of the campuses without a nursing shortage.  Ex. D.  Williams told her that she could work at one of those campuses with his approval.  Id.  Plaintiff then asked for clarification on whether she could apply to a single-campus hospital "with a score of 12 since [she hadn't] heard from" the qualifying facilities to which she had applied.  Id.  Williams responded, "[y]es that is correct."  Id.

Plaintiff then applied to and was offered a position at Sloan Kettering.  Compl. ¶ 25.  Sloan Kettering has multiple locations, at least one of which—on 125th Street—has a critical shortage of nurses.  Id. ¶ 26.  Plaintiff, however, was offered a position at a location on 67th Street without a shortage.  Id. ¶¶ 27-28.  She again emailed Williams, described her situation, and asked whether she could use the address of the location with the shortage in her paperwork.  Compl. Ex. E, ECF No. 15-5.  Williams replied that "if [her] HR deems them as the same hospital and they sign your forms then yes it will work."  Id.  Plaintiff then accepted the position at 67th Street and informed Williams that "HR approved . . . the site with the qualifying score as part of the same facility as the one I am working in."  Id.  In response, Williams explained to her how to submit her initial employment verification form.  Id.  On July 8, 2014, plaintiff submitted the form, which stated that she was employed by the 125th Street location of Sloan Kettering.  Compl. Ex. F, ECF No. 15-6.

When the scholarship program attempted to verify plaintiff's employment, a manager at Sloan Kettering informed the program that plaintiff did not work at the 125th Street location. Compl. Ex. C, ECF No. 15-3. HRSA states that it then informed plaintiff on July 24, 2014 that her employment did not qualify under the scholarship agreement and that she would have to transfer to the 125th Street location to meet her obligation. Id. After plaintiff asked for clarification, HRSA emailed her a summary of her contractual obligations and informed her she could ask for an extension to continue her job search. Id. It also gave plaintiff the contact information of the scholarship program's Branch Chief. Id.

On March 4, 2015, Elisangela Vossen-Fidalgo, an HRSA employee, informed plaintiff that her "9-month timeframe to secure employment at an eligible facility [had] expired." Compl. ¶ 35; Compl. Ex. G, ECF No. 15-7. Vossen-Fidalgo directed plaintiff to provide her with a status update by March 18, 2018, or else her "case [would] be forwarded to [their] Legal and Compliance Office for default actions." Ex. G. Plaintiff replied before the deadline, attaching both her employment verification form and her email exchange with Williams. Id. Vossen-Fidalgo did not respond. Compl. ¶ 37. After the March 18 deadline had passed, plaintiff sent another email to Vossen-Fidalgo. Id. ¶ 38. Plaintiff stated that Williams was "telling [her] that he did not give [her] approval to accept my current position," but that this was inconsistent with Williams' 2014 emails to her. Ex. G. She told Vossen-Fidalgo that it was "unjust that [she] was given approval by [Williams] to take [her] current job and now that approval is being withdrawn and [she was] being told [she] will have to pay back the scholarship plus interest within three years." Id. She concluded the email by asking Vossen-Fidalgo to "help rectify this situation." Id. Vossen-Fidalgo did not respond. Compl. ¶ 38.

Roughly two years later, on June 29, 2017, plaintiff received a debt collection letter which stated that her loan was in default and that she owed the principal of her loan, plus close to $25,000

in interest.  Id. ¶ 39.  According to plaintiff, she did not know that the loan had been accruing interest.  Id.  Nor, she says, had Williams or Vossen-Fidalgo ever told her that she was in default.  Id. ¶ 40.

### B.  Procedural Background

After receiving the debt collection letter, plaintiff retained an attorney, who sent HRSA a letter on July 20, 2017.  Compl. Ex. A, ECF No. 15-1.  The letter stated that it was a "formal demand by Ms. Amy Winik for relief consisting of finding that she is not in default of the terms and conditions of her nursing scholarship program contract."  Id. at 2.  On December 7, 2017, plaintiff's counsel sent another letter, this time to HHS.  Compl. Ex. B, ECF No. 15-2.  The letter identified itself as "formal notice of Ms. Winik's intent to file a declaratory action in the United States District Court of the Eastern District of New York whereby Ms. Amy Winik will seek relief consisting of a finding that she is not in default of the terms and conditions of her nursing scholarship program contract."  Id. at 2.  HRSA responded to these letters on January 18, 2018.  Ex. C.  It stated that Williams' March 2014 email to plaintiff did not constitute formal approval that her job conformed to the scholarship terms.  Id. at 2.  In addition, it stated that beginning on July 25, 2014, plaintiff had been "advised in numerous emails that her current employment did not meet the requirements of the" scholarship program.  Id.  It then concluded that "the decision to place [plaintiff] in default is supported by the documentation the agency has been provided" and that this was the agency's "final decision."  Id.

Plaintiff brought suit against HRSA in February 25, 2018, alleging a claim of negligent misrepresentation.  Original Compl. ¶¶ 37-48, ECF No. 1.  After an exchange of pre-motion letters, plaintiff filed her amended complaint, which names the United States as the defendant and alleges a claim of plain negligence.  Compl. ¶¶ 42-51.  Plaintiff argues that Williams and Vossen-Fidalgo had a duty to act with reasonable care in advising scholarship recipients on how to comply with the scholarship terms.  Id. ¶¶ 46-48.  Plaintiff alleges that Williams and Vossen-Fidalgo breached this duty by "(1) persistently providing incorrect information to Plaintiff; (2) failing to promptly correct such

information; (3) failing to advise Plaintiff of the consequences of continuing her employment with [Sloan Kettering]; and (4) failing to advise Plaintiff that her nursing scholarship contract was placed in default as of October 1, 2014." Id. ¶ 49. Plaintiff seeks compensatory damages of $109,262.14—the principal and interest she owes to HRSA. Id. ¶ 41.

The government has moved to dismiss the complaint on two grounds. First, it argues that plaintiff has failed to administratively exhaust her tort claim because she did not present it to the Department of Health and Human Services in accordance with the FTCA. Def.'s Mot. 6-12. Second, it argues that plaintiff's claim is barred by the FTCA's misrepresentation exception, which excludes claims for negligent misrepresentation from the FTCA's waiver of sovereign immunity. Id. at 12-15.

## DISCUSSION

Defendant's motion to dismiss is granted, because plaintiff's claim arises out of the government's alleged misrepresentation.[1]

A district court must dismiss a case under Rule 12(b)(1) when it "lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In making this determination, I must "accept as true all material factual allegations in the complaint." Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992). Plaintiff must establish, by a preponderance of the evidence, that subject-matter jurisdiction existed at the time the complaint was filed. Grupo Dataflux v. Atlas Global Grp., L.P., 541 U.S. 567, 570-71 (2004); Makarova, 201 F.3d at 113. To the extent that factual determinations are necessary to confirm my authority to hear a case, I may "refer to evidence outside the pleadings." Makarova, 201 F.3d at 113.

The FTCA waives the federal government's sovereign immunity for "claims against the United States, for money damages . . . for injury or loss of property . . . caused by the negligent or wrongful

---

[1] Because I conclude that plaintiff's claim is barred by 28 U.S.C. § 2680(h), I need not address defendant's argument that plaintiff has failed to exhaust her administrative remedies.

act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). The FTCA is the exclusive remedy for such suits. United States v. Smith, 499 U.S. 160, 165-66 (1991). This is true "even when the FTCA itself precludes [g]overnment liability." Id. at 166.

The government has not waived its sovereign immunity for tort claims "arising out of . . . misrepresentation." 28 U.S.C. § 2680(h). This "misrepresentation exception" includes "claims arising out of negligent, as well as deliberate, misrepresentation." United States v. Neustadt, 366 U.S. 696, 702 (1961). Moreover, it includes misrepresentation "result[ing] from the failure to provide information, as well as from providing information that is wrong." Ingham v. Eastern Air Lines, Inc., 373 F.2d 227, 239 (2d Cir. 1967).

To decide whether this exception applies, "a court must look, not to the theory upon which the plaintiff elects to proceed, but rather to the substances of the claim which [she] asserts." Lambertson v. United States, 528 F.2d 441, 443 (2d Cir. 1976). Thus, the Supreme Court has rejected attempts to characterize inaccurate statements as arising out of negligence instead of misrepresentation as "nothing more than an attempt to circumvent § 2680(h)." Neustadt, 366 U.S. at 703. Courts are to "look to the gravamen of the claim, and not to plaintiff's theory of liability or characterization of the claim." Simone v. United States, Case No. 09-cv-3904, 2015 WL 419691, at *24 (E.D.N.Y. Jan. 30, 2015) (citing Dorking Genetics v. United States, 76 F.3d 1261, 1265 (2d Cir. 1996)).

Consistent with these principles, the misrepresentation exception does not "bar negligence actions which focus not on the Government's failure to use due care in communicating information, but rather on the Government's breach of a different duty." Block v. Neal, 460 U.S. 289, 297 (1983); accord Dorking Genetics, 76 F.3d at 1265. In Ingham, for example, plaintiff alleged that the Federal Aviation Administration negligently failed to report changing weather conditions to an airplane landing in heavy fog. 373 F.2d at 233. The government was not able to escape liability under the

misrepresentation exception because the failure to report weather conditions, while "involv[ing] an element of 'misrepresentation,' in the generic sense," did not fall within the scope of § 2680(h). Id. at 239. Analogizing to a case in which the Coast Guard negligently failed to maintain a lighthouse lamp, Indian Towing Co. v. United States, 350 U.S. 61, 69 (1955), the Second Circuit held that "[w]here the gravamen of the complaint is the negligent performance of operational tasks, rather than misrepresentation, the government may not rely upon § 2680(h) to absolve itself of liability." Ingham, 373 F.2d at 239.

In sum, § 2680(h) bars a claim where, as here, the government's alleged misrepresentations are the gravamen of the action. Plaintiff maintains that her negligence claim arises out of the government's "failure to act," not its misrepresentations. Mem. of Law in Opp. of Def.'s Mot. to Dismiss 11-13, ECF No. 19. Specifically, she argues that Williams and Vossen-Fidalgo "assumed a duty to act with reasonable care with respect to advising Plaintiff on the terms and conditions of her scholarship." Id. at 12. In other words, the government took on the responsibility of providing scholarship information and of informing her if she was placed in default. According to plaintiff, Williams and Vossen-Fidalgo's "fail[ure] to promptly correct" the alleged misstatements, as well as their failure "to advise Plaintiff of the consequences of continuing her employment" or that she had been "placed in default" are what caused her injury. Id. at 13.

Despite plaintiff's attempts to recharacterize her claim, the gravamen of her complaint remains "the Government's failure to use due care in communicating information," Block, 460 U.S. at 297. Williams' and Vossen-Fidalgo's conduct is not analogous to the "negligent performance of operational tasks" in Ingham and Indian Towing. See Ingham, 373 F.2d at 239. Those cases "involved a negligent failure on the part of government employees to perform a duty they had undertaken—to provide information and warnings to travelers of the waterways in one case and airways in the other. And in both cases, the breach of this duty resulted in injuries and deaths." Id. Here, in contrast, the alleged

7

injury is "of a financial or commercial character" id., and involves no additional duty on the part of the government beyond its duty to use reasonable care in its communications. The focal point of plaintiff's complaint is what the government told her—or failed to tell her—about how to comply with the terms of her scholarship.[2] Because the government has not waived its sovereign immunity for such a claim, 28 U.S.C. § 2680(h), this court lacks subject-matter jurisdiction to hear it. Plaintiff's claim is therefore dismissed.

## CONCLUSION

For the reasons discussed above, defendant's motion to dismiss is granted.

So ordered.

Date: July 20, 2018          s/ Allyne R. Ross
      Brooklyn                Allyne R. Ross
                             United States District Judge

---

[2] While not dispositive, plaintiff's letters to HRSA and HHS, as well as her original complaint, confirm this conclusion. All three alleged negligent misrepresentation on the part of the government. See Exs. A-B; Original Compl.